# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ELANCO ANIMAL HEALTH INC, and ELANCO ANIMAL HEALTH GMBH,<br><br>    Plaintiff,<br><br>v.<br><br>SERGEANT'S PET CARE PRODUCTS LLC,<br><br>    Defendant. | Case No.:<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL AT OMAHA** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs, Elanco Animal Health, Inc. ("Elanco Inc.") and Elanco Animal Health GMBH ("Elanco GMBH") (collectively "Plaintiffs" or "Elanco"), by its undersigned counsel, file this Complaint for Patent Infringement against Defendant Sergeant's Pet Care Products LLC, ("Defendant" or "Sergeant's"), and allege as follows:

## NATURE OF THE ACTION

This is a civil action for the infringement of U.S. Patent No. 7,910,122 ("the 'Asserted Patent" or "the '122 Patent") under 35 U.S.C. § 271, brought by Elanco against Sergeant's. A contemporaneously-filed suit for infringement of the '122 Patent has been brought against Sergeant's parent (or otherwise related) company, Pet IQ, LLC ("Pet IQ"), in the United States District Court for the Middle District of Florida.

## PARTIES

1.  Elanco Inc. is an Indiana incorporation with its headquarters and principal place

of business at 2500 Innovation Way, Greenfield, Indiana, 46140. Elanco GMBH is a German corporation having its principal place of business at Alfred-Nobel-Strasse 50, 40789 Monheim am Rhein, Germany, and is an indirect, wholly-owned subsidiary of Elanco Inc. For more than 70 years, Elanco has been committed to transforming animal care by empowering veterinarians, farmers, and animal health professionals. As a global leader in animal health, Elanco provides innovation solutions to improve animal health and well-being.

2. Upon information and belief, Sergeant's is a Michigan limited liability company with a principal place of business at 10077 134th Street, Omaha, Nebraska 68138, in this judicial district.

3. Upon information and belief, Sergeant's is a wholly-owned subsidiary of, or is otherwise legally related to, Pet IQ, a Florida corporation. As such, Sergeant's is a privy of Pet IQ, at least for purposes referenced herein, including 35 U.S.C. §315.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because it arises under the United States Patent Act, 35 U.S.C. §1 *et. seq.*

5. This Court may exercise personal jurisdiction over Sergeant's on the basis that Sergeant's, which on information and belief is a Michigan limited liability company that operates at and has its principal place of business at an address in this judicial district (10077 134th Street, Omaha, Nebraska 68138), and has committed and/or induced acts of infringement in this judicial district.

6. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(1)-(2) and §1400(b). Upon information and belief, Sergeant's has transacted business in this district, has a

regular and established place of business in this district, and has committed and/or induced acts of patent infringement in this district.

## PATENT-IN-SUIT

7.      On March 22, 2011, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,910,122, titled Active Compound-Containing Solid Moulded Bodies for External use Against Parasites on Animals ("the 'Asserted Patent" or "the '122 Patent"). A copy of the '122 Patent is attached as Exhibit A.

8.      The '122 Patent is valid and enforceable until September 16, 2027.

9.      Elanco GMBH is the owner of all right, title, and interest in the '122 Patent and Elanco Inc. is authorized to commercialize the '122 Patent. Collectively, Elanco have the right to sue for infringement of the '122 Patent. The allegations of patent infringement herein are supported by the '122 Patent Claim Chart submitted herewith as Exhibit B.

## BACKGROUND

10.     Elanco is dedicated to making animals' lives better, because Elanco believes that making their lives better makes life better for all. One of Elanco's product lines that has been making life better for companion animals for years is Elanco's innovative SERESTO® line of collars for dogs and cats. As of July 2025, over 41 million SERESTO ® collars have been sold in the United States since 2012.

11.     Elanco's innovative, first in class, SERESTO® collars have been recognized by the issuance of sixty (60) patents worldwide. In the United States, the United States Patent and Trademark Office ("USPTO") specifically recognized that the composition and method of using Elanco's SERESTO® collars were "new and useful", were "novel", and were not "obvious". 35 U.S.C. §§ 101, 102 and 103. As such, on March 22, 2011, the USPTO granted the '122 Patent

(Exhibit A hereto). The '122 patent is currently enforceable and will not expire until September 16, 2027.

12. Elanco's SERESTO® brand similarly enjoys worldwide recognition and protection with 78 trademark registrations in 53 countries, including the United States. In addition to the patents and trademarks that protect Elanco's SERESTO® collars and brand, other statutory and/or common law intellectual property rights such as, e.g., trade dress, and/or trade secrets, provide additional protection in various jurisdictions, including the United States.

13. Elanco's innovative SERESTO® collars for dogs and cats were developed through years of research, clinical development, testing, and stringent regulatory review. The collars have now been validated over the years by customers worldwide.

14. Elanco's enforcement of its '122 Patent rights is to ensure that no so called "generic" gains a head-start over and against other potential "generics". Until Elanco's '122 Patent expires on September 16, 2027, no infringing copycat products should be allowed to jump the gun and unfairly compete to gain market share.

15. Elanco has actively engaged in a variety of enforcement actions to protect its brand and its intellectual property. For example, to police and protect its SERESTO® brand, in recent years Elanco has filed forty trademark Opposition, Cancellation, and/or Invalidation actions. Similarly, in just the last three years, Elanco has mounted an aggressive anticounterfeiting initiative resulting in the seizure of counterfeit products worth multiple millions of dollars. Below is an image of Elanco's SERESTO® product and packaging. (See Exhibit C).



16. As noted on the packaging (Exhibit C), SERESTO® collar, contain the active ingredients flumethrin (4.5%) and imidacloprid (10%), which are impregnated into a polymer matrix system. The matrix is designed to release the two active ingredients continuously onto the dog's or cat's hair coat and skin throughout an eight-month application period, at which point, pursuant to the label instructions, the collar should be removed and a new collar applied.

17. Elanco and/or its predecessor is the original registrant at the EPA of a pesticide product containing flumethrin and imidacloprid, which was approved for use in connection with Elanco's SERESTO® collars in 2012. Beginning in 2010, Elanco and/or its predecessor submitted extensive data, including efficacy, toxicology and other safety data, to the EPA. Much of that data remains within a 15-year window in which it cannot be considered by the EPA in support of another company's Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") registration application unless a valid offer to pay is made to Elanco, in conformity with FIFRA and its implementing regulations.

18. Elanco understands the EPA has approved Sergeant's FIFRA registration applications for dog and cat collars containing flumethrin and imidacloprid. See Exhibits D and E, respectively. Elanco has reviewed the National Pesticide Information Retrieval System ("NPIRS") database and EPA's Pesticide Data Submitter List, which reveal that while Sergeant's submitted various product chemistry data to the EPA to support registration of those pet collars, it has apparently not submitted any efficacy, toxicology or companion animal safety studies of Sergeant's Pet Armor Extend products. Efficacy, toxicology and companion animal safety studies would be required to register a pet collar containing flumethrin and imidacloprid.

19. Sergeant's sought to rely on Elanco's data for these purposes. Elanco received three letters from Sergeant's dated March 17, 2022, offering to pay Elanco for use of Elanco's data on file with the EPA to support the registration of Sergeant's pet collars containing flumethrin and imidacloprid.

20. On information and belief, Sergeant's and the EPA relied on Elanco data relating to efficacy, toxicology or companion animal safety of its SERESTO® collars in connection with the recently-granted EPA registrations.

21. On information and belief, Pet IQ/Sergeant's EPA registrations relied on data generated for Elanco's SERESTO® product approval, due to the complicated nature of SERESTO's patented polymer matrix and its impact on the release of the active ingredients, affecting both safety and efficacy. Elanco has submitted dozens of SERESTO® efficacy, toxicology and companion animal safety studies to the EPA for their review. There is no indication that Pet IQ/Sergeant's has submitted efficacy, toxicology or companion animal safety studies for Pet IQ/Sergeant's Pet Armor Extend collars.

22. In July 2025, Elanco became aware for the first time that Pet IQ (via its wholly owned subsidiary Sergeant's) received notice of EPA registration for a flea and tick collar for dogs. (See Exhibit D).

23. At that same time, Elanco became aware for the first time Pet IQ/Sergeant's received notice of EPA registration for a flea and tick collar for cats. (See Exhibit E).

24. Upon information and belief Pet IQ/Sergeant's are and have been aware of the fact that Elanco's SERESTO® product formulation and methods of treatment are patent protected under the '122 Patent.

25. Pet IQ filed Inter Partes Review No. IPR2022-00304 ("the '304 IPR") on December 12, 2021, in which it unsuccessfully challenged the validity of the claims in Elanco's '122 Patent. In accordance with 35 USC § 315, Pet IQ and its subsidiary and privy, Sergeant's, are estopped from raising any invalidity defense to the allegations of infringement of the '122 Patent based on any ground raised or which reasonably could have been raised in the '304 IPR.

26. Based on its filing of the '304 IPR, there is no dispute that Pet IQ was aware of the '122 Patent long before the conduct complained of herein.

27. Also long before the conduct of Pet IQ/Sergeant's complained of herein, on information and belief Sergeant's was aware of the '122 Patent and was also an intended beneficiary of Pet IQ's actions in filing the '304 IPR.

28. As shown in the attached Exhibits F and G the packaging for the Pet Armor Extend Accused Product for dogs and cats boast of "contains imidacloprid and flumethrin, the same active ingredients used in SERESTO®".

29. Remarkably, on or about August 13, 2025, more than two years before the expiration of the '122 Patent on September 16, 2027, Pet IQ/Sergeant's began offering the

7

Accused Products for sale at the SuperZoo trade show ("SuperZoo") in Las Vegas, Nevada. SuperZoo is "North America's largest marketplace for the pet industry. This is the destination for pet professionals to find debut products". (See https://www.superzoo.org).

30.  The Pet IQ website (petiq.com/manufacturing/) states "We manufacture more than 85% of our non-consumable products, including our category- leading flea and tick formulations…on site in our Nebraska facility." Nebraska is where Sergeant's is located. Moreover, on its website listing of pet product core brands (petiq.com/pet-products/), both Pet Armor and Sergeant's are listed. Similarly, the Sergeant's website (sergeants.com) states "Meet Our Family" and identifies both Pet IQ and Pet Armor, among other brands. (See Sergeant's website excerpt below). Furthermore, as also seen below, the Sergeant's website concludes with a copyright notice identifying Pet IQ, LLC as the copyright owner.

**MEET OUR FAMILY**

PETIQ    ADVECTA    CAPSTAR    MINTIES    NEXTSTAR

PETARMOR    SENTRY    Sergeant's    VETIQ

Copyright ©2022-2024 PetIQ, LLC. All rights reserved.    Privacy Notice    Cookie Policy    Terms of Use    Cookie Consent Tool

31.  As depicted in the image below (see also Exhibit H), the packaging associated with the Accused Products being offered for sale at SuperZoo state "Manufactured for" Sergeant's. On information and belief, the Accused Products at SuperZoo had previously been "made" for

Sergeant's. Under the United States Patent Laws, acts of infringement include making, using, selling, offering to sell, and importing infringing products. On information and belief, the Accused Products at SuperZoo had previously been "made" and were being offered for sale at the show.



32. Shown below is an excerpt of the Accused Product labeling (see Exhibit I), which shows the details of the active ingredients. As noted in the attached Exhibit B Claim Chart, the accused Pet Armor Extend products for cats and dogs utilize the same active ingredients claimed in the '122 Patent and which are also found in the SERESTO® product, in exactly the same amounts! The percentage of the active ingredients based on the Pet Armor Extend labeling fall squarely within the ranges set forth in the '122 Patent claims (See Exhibit B Claim Chart).



33. Upon information and belief, Sergeant's either has made, used, sold, or offered for sale the Accused Products in the United States.

34. Upon information and belief, Sergeant's intends to offer the generic Accused Products at a significantly lower price point than Elanco's patented SERESTO® product, which, absent relief from this Court, will lead to irreparable price erosion for Elanco's patent-protected SERESTO® product.

**COUNT I:**

***Sergeant's Infringement of the '122 Patent under 35 U.S.C. § 271***

35. Elanco incorporates Paragraphs 1- 34 by reference as if fully incorporated here.

36. Upon information and belief, Sergeant's has infringed and continues to infringe within the meaning of 35 U.S.C. § 271 by, without Elanco's authority, importing, making, using, selling, and/or offering to sell in the United States one or more products covered by one or more claims of the '122 Patent. Specifically, the Accused Products in this case are Pet Armor Extend flea and tick collars for cats and dogs and those Accused Products, and their method of use,

10

infringe claims 1-3 of the '122 Patent either literally, or under the doctrine of equivalents, as detailed in the Exhibit B Claim Chart.

37. Sergeant's/Pet IQ's own product labels, recent EPA registrations, and SuperZoo displays demonstrate Sergeant's has directly and/or indirectly infringed claim 1 and 3 of the '122 Patent in violation of 35 U.S.C. § 271 by importing, making, using, offering for sale, and/or selling the infringing Pet Armor Extend flea and tick collars for dogs and cats, in accordance with Elanco's patented composition and method, without authorization from Elanco. Moreover, Sergeant's is inducing costumers to infringe claim 2 of the '122 Patent by practicing the patented method of controlling parasites on animals using the patented formulation.

38. According to the Pet Armor Extend product label (see Exhibit I), the Accused Products comprises the following formula:
>Flumethrin 4.5%
>Imidacloprid 10.0%
>Other Ingredients 85.5%

39. Claim 1 of the '122 Patent calls for a composition including Flumethrin at "about 1% to about 20%" and Imidacloprid at "about 1% to about 20%". As admitted in Exhibit I, the Accused Products fall squarely in the claimed ranges.

40. A chart detailing how the Pet Armor Extend products infringe claims 1-3 of the '122 patent is attached as Exhibit B.

41. Upon information and belief, based on the foregoing and Exhibit B, the Pet Armor Extend products include all of the limitations of Claims 1 and 3 of the '122 Patent, either literally or under the doctrine of equivalents, and thus the Accused Products are direct infringements. Additionally, use of the Accused Products by customers infringes method claim 2 of the '122 Patent and Sergeant's is liable for inducing infringement of the '122 Patent claim 2.

42. By selling and/or offering for sale the Accused Products in the United States to customers, Sergeant's specifically intends and directs that others use the Accused Products in an infringing manner, thereby inducing infringement of the '122 Patent pursuant to 35 U.S.C. § 271(b).

43. Upon information and belief, Sergeant's infringing acts will continue unless restrained and enjoined by this Court.

44. Upon information and belief, based on Sergeant's prior knowledge of the '122 Patent, Sergeant's acts of infringement are willful.

45. Elanco has been and will continue to be irreparably harmed by Sergeant's infringement of the '122 Patent.

46. Sergeant's infringement of the '122 Patent has caused and is continuing to cause Elanco to suffer irreparable harm, which harm is not fully compensable by monetary damages, and Elanco is entitled to injunctive relief to prevent further infliction of such harm.

47. Elanco has or will suffer monetary damages as a result of the direct and indirect infringing activities of Sergeant's and will continue to suffer damages as long as those infringing activities continue.

48. Elanco is entitled to recover damages adequate to compensate Elanco for Sergeant's infringement of the '122 Patent.

49. By virtue of at least the filing of this Complaint, Sergeant's has actual notice of the '122 Patent and the grounds for infringement, such that any future infringing acts will be willful.

## **REQUEST FOR RELIEF**

WHEREFORE, Elanco respectfully requests the following relief:

1. A judgment that Defendant Sergeant's has directly infringed one or more claims of the Asserted Patent, and/or that Defendant Sergeant's has indirectly infringed one or more claims of the Asserted Patent by way of inducing direct infringement by its customers;

2. Entry of a preliminary and a permanent injunction restraining and enjoining Defendant Sergeant's, its officers, agents, employees, and those persons in privity with them and those acting in active concert or participation with Defendant Sergeant's, from any further direct or indirect infringement of the '122 Patent for the full term thereof, including any extensions, pursuant to 35 U.S.C. § 283;

3. An Order instructing Defendant Sergeant's to destroy:

   i. Any and all remaining Accused Products;

   ii. Any and all products created or derived from the Accused Products; and

   iii. Any and all scientific or regulatory data and analysis generated as a result of Defendant Sergeant's use of Accused Products or any product created or derived from the Accused Products;

4. An Order instructing Defendant Sergeant's to file with this Court and serve upon Elanco a report in writing and under oath setting forth in detail the manner and form in which Defendant Sergeant's has complied with any preliminary or permanent injunction or Order resulting from this case within thirty (30) days after entry of such preliminary or permanent injunction or Order;

5. A judgment that Elanco be awarded all appropriate damages under 35 U.S.C. § 284 for Defendant Sergeant's past infringement and any continuing or future infringement of the '122 Patent, up until the date such judgment is entered, including pre- and post-judgment interest, costs, and disbursements pursuant to 35 U.S.C. § 284;

6. A finding that Defendant Sergeant's infringing acts are willful, and an accompanying award of treble damages pursuant to 35 U.S.C. § 284;

7. A finding that this action is an exceptional case under 35 U.S.C. § 285 such that Elanco be awarded costs and expenses, including reasonable attorneys' fees, that Elanco incurs in prosecuting this action; and

8. A judgment or award of such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Elanco demands a jury trial on all claims and issues so triable and designates Omaha as the place of trial.

Dated: August 22, 2025

Respectfully submitted,

*/s/ Timothy J. Thalken*
Timothy J. Thalken, #22173
Fraser Stryker PC LLO
500 Energy Plaza
409 South 17th Street
Omaha, NE 68102
Phone: (402)978-5285
tthalken@fraserstryker.com
*Local Counsel for Plaintiffs*

AND

Gregory F. Ahrens, *pro hac vice forthcoming*
Wood Herron & Evans, LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Phone: (513) 241-2324
gahrens@whe-law.com
*Attorney for Plaintiffs*