## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ELANCO ANIMAL HEALTH INC, and ELANCO ANIMAL HEALTH GMBH,<br><br>Plaintiffs,<br><br>vs.<br><br>SERGEANT'S PET CARE PRODUCTS LLC,  PETIQ, INC., and  PETIQ, LLC,<br><br>Defendants. | **8:25CV514**<br><br>**MEMORANDUM AND ORDER**<br>*NUNC PRO TUNC* |
| PETIQ, LLC,  SERGEANT'S PET CARE PRODUCTS, LLC, and  PETIQ, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>ELANCO ANIMAL HEALTH, INC., and ELANCO US, INC.,<br><br>Defendants. | **8:25CV588**<br><br>**MEMORANDUM AND ORDER AND FINDINGS AND RECOMMENDATION**<br>*NUNC PRO TUNC* |

This matter is before the undersigned magistrate judge on several pending motions in both of the above-captioned cases.

## BACKGROUND

### I.    The Elanco et al. v. Sergeant's Pet Care et al. Lawsuit (Case No. 8:25CV514)

On August 22, 2025, Plaintiffs, Elanco Animal Health, Inc. ("Elanco Inc.") and Elanco Animal Health GMBH ("Elanco GMBH") (collectively, "Elanco") filed a Complaint against Sergeant's Pet Care Products LLC ("Sergeant's") for patent infringement either literally or under the doctrine of equivalents.[1]  (Filing No. 1).  Elanco filed an Amended Complaint (Filing No. 12)

---

[1] Elanco indicated it also contemporaneously filed suit for infringement of the same patent against Sergeant's parent company, Pet IQ, LLC, in the United States District Court for the Middle District of Florida, 6:25-cv-01626-CEM-LHP (M.D. Fla.)).  (Filing No. 1 in Case. No 8:25CV514).  According to PetIQ, Elanco dismissed the Florida case on September 12, 2025, after it was informed "the entity sued there, PetIQ, LLC (Florida), had no relationship to the PetArmor® Extend Collar products."  (Filing No. 1 in Case No. 8:25CV588).

on September 8, 2025, and, after initially filing a Second Amended Complaint (Filing No. 13) without leave that was stricken by the Court, Elanco filed a Second Amended Complaint (Filing No. 30) on October 16, 2025, which is Elanco's operative pleading.

Elanco's Second Amended Complaint names Sergeant's, PetIQ, Inc., and PetIQ, LLC (together, "PetIQ") as defendants (collectively, "Defendants"). Elanco alleges it is the owner of U.S. Patent No. 7,910,122 ("the '122 Patent") issued by the U.S. Patent and Trademark Office on March 22, 2011. The '122 Patent pertains to the composition and method of using Elanco's SERESTO® ("Seresto") flea and tick pet collars containing flumethrin (4.5%) and imidacloprid (10%) as active ingredients impregnated into a polymer matrix system. The '122 Patent expires on September 16, 2027. Elanco alleges that on December 12, 2021, PetIQ filed Inter Partes Review No. IPR2022-00304 ("the '304 IPR") to challenge the validity of the claims in Elanco's '122 Patent, which was unsuccessful. In this lawsuit, Elanco alleges Defendants' "PetArmor Extend" pet flea and tick collars containing flumethrin and imidacloprid infringe the '122 Patent, and further infringe Seresto's distinctive trade dress. (Filing No. 30 at pp. 1, 6-8).

According to the Second Amended Complaint, Elanco is the original registrant at the EPA of a pesticide product containing flumethrin and imidacloprid, which was approved for use in connection with its Seresto collars in 2012. Elanco alleges that, beginning in 2010, it submitted efficacy, toxicology, and other safety data to the EPA, which data remains within the 15-year window in which it cannot be considered by the EPA in support of another company's Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") registration application unless Elanco receives a valid offer to pay. (Filing No. 30 at p. 6). Elanco alleges it received three letters from Sergeant's dated March 17, 2022, offering to pay Elanco for use of Elanco's EPA data to support the registration of Sergeant's PetArmor Extend flea and tick collars containing flumethrin and imidacloprid. Defendants assert Elanco never responded to the letters. (Filing No. 31 at p. 40). The EPA subsequently approved Defendants' FIFRA registration applications for dog and cat flea collars; Elanco alleges that the EPA relied on Elanco's data relating to efficacy, toxicology or companion animal safety of its Seresto collars in connection with Defendants' EPA registrations. (Filing No. 30 at pp. 7-8).

Elanco alleges that, following Defendants' EPA approval, on August 13, 2025, Defendants began offering PetArmor Extend products for sale at the SuperZoo trade show in Las Vegas, Nevada. Elanco contends the labeling on the PetArmor products reflects they utilize the same

2

active ingredients in the same amounts claimed in the '122 Patent and as utilized in Seresto products.  (Filing No. 30 at pp. 11-12).  Elanco alleges that, prior to Defendants' launch of the PetArmor Extend collar products at SuperZoo, previous PetArmor collar products utilized a different packaging design, and that PetArmor changed its packaging to "mimic" or "duplicate" Seresto's trade dress, including a  bifurcated label with a pet image on top with an informational label below it.  (Filing No. 30 at pp. 15-17).

Count I of Elanco's Second Amended Complaint asserts a claim for infringement of the '122 Patent under the doctrine of equivalents pursuant to 35 U.S.C. § 271.  Specifically, Elanco alleges Defendants' "product labels, recent EPA registrations, and SuperZoo displays" demonstrates direct or indirect infringement of Claims 1 and 3 of the '122 Patent "by importing, making, using, offering for sale, and/or selling the infringing Pet Armor Extend flea and tick collars for dogs and cats, in accordance with Elanco's patented composition and method," without Elanco's authorization.  Elanco also alleges Defendants are "inducing customers to infringe Claim 2 of the '122 Patent under the doctrine of equivalents by practicing the patented method of controlling parasites on animals using the patented formulation."  Elanco alleges the PetArmor Extend products include all of the elements of Claims 1 and 3 of the '122 Patent, as certain elements are present literally and "at least one element is present under the doctrine of equivalents[.]"  (Filing No. 30 at pp. 18-20).

The remainder of Elanco's claims arise out of Defendants' purported use and imitation of Elanco's Seresto trade dress: Count II asserts a claim for trade dress infringement under the Lanham Act; Count III asserts a claim for trade dress infringement and unfair competition under Nebraska common law; and Count IV asserts a claim for violation of the Nebraska Uniform Deceptive Trade Practices Act.  (Filing No. 30 at pp. 21-24).

Elanco requests a judgment that Defendants directly infringed one or more claims of the '122 Patent, violated the Lanham Act, and violated Nebraska common law and the NUDTPA; and further requests entry of a preliminary and a permanent injunction restraining and enjoining Defendants from any further direct or indirect infringement of the '122 Patent for its full term; an order requiring Defendants to destroy remaining infringing products and products or data generated from the infringing products; an order requiring Defendants to file a report under oath detailing compliance with such injunction; and for damages under 35 U.S.C. § 284 and 15 U.S.C.

§ 1117, including and pre- and post-judgment interest, treble damages for willful infringement, and costs and expenses.  (Filing No. 30 at pp. 24-26).

Defendants deny their PetArmor Extend products directly or indirectly infringe, either literally or under the doctrine of equivalents, any valid claim of the '122 Patent.  Defendants also affirmatively allege the '122 Patent is invalid for failure to satisfy one or more conditions and requirements of patentability.  Defendants further affirmatively allege Elanco's trade dress claims are barred because the alleged Seresto trade dress lacks distinctiveness, is functional, and is barred by the doctrine of fair use, among other affirmative defenses.  (Filing No. 31 at pp. 26-27).

PetIQ and Sergeants also filed a counterclaim against Elanco for antitrust violations arising under the Sherman Act.  (Filing No. 31 at p. 29).  Defendants allege that Elanco is the longstanding monopolist in cat and dog flea and tick collars, but rather than compete with PetIQ Elanco has "made the strategic decision to file an objectively baseless patent infringement suit,"  and then to "weaponize that sham lawsuit to scare retailers into thinking they cannot sell the PetIQ collar while the lawsuit is pending."  (Filing No. 31 at p. 29).

Defendants allege the PetArmor Extend Collars "do not literally infringe any claim of the '122 Patent for the simple reason that they contain a chemical component known under the trade name 'Miglyol 812,' whereas the '122 Patent claims recite a different chemical component, propylene glycol dicaprylopcaprate, known under the trade name 'Miglyol 840.'"  Defendants likewise contend Elanco's doctrine of equivalents infringement claim is "just as much a sham" because it is barred by "multiple doctrines."[2]  (Filing No. 31 at pp. 31-32).  Defendants assert they "made irrefutable facts of non-infringement known to Elanco as early as December 2022," and yet Elanco continued to file and maintain this "sham lawsuit" and "weaponiz[e] the patent enforcement process by initiating direct communications with Defendants' "existing and prospective retail partners for PetArmor Extend Collars."  (Filing No. 31 at p. 32).

Elanco has now filed two motions seeking to delay and stay litigation as to Defendants' Counterclaim.  First, Elanco has filed a Motion to Extend Deadline to File Answer or Substantive Rule 12(b)(6) Motion to Dismiss Counterclaims (Filing No. 40), which is premised upon its arguments in its Motion to Stay Defendants' Counterclaim  (Filing No. 43).  Elanco asks the Court

---

[2] Defendants have already filed a Motion for Summary Judgment of non-infringement as to Elanco's patent claim based upon these assertions.  (Filing No. 51; Filing No. 52).  Elanco has filed a motion to defer consideration of that motion.  (Filing No. 58).  Those motions remain pending before Chief Judge Robert F. Rossiter, Jr.

to stay its deadline to file a responsive pleading to the Counterclaim until the merits of Elanco's infringement action are decided. (Filing No. 40). Elanco likewise seeks to stay the Counterclaim because its "threshold viability . . . depends entirely on the outcome of Elanco's intellectual property infringement claims." (Filing No. 43 at p. 1). In short, Elanco seeks to stop all further pleadings and progression as to the Counterclaim until Elanco's claims are decided on the merits.

PetIQ opposes Elanco's request for "a blanket stay on PetIQ's antitrust counterclaim pending resolution of Elanco's patent infringement *and* trade dress claims" because such a stay would not serve judicial economy, is inefficient, and would be unfairly prejudicial. (Filing No. 50 at pp. 2-4) (emphasis in original).

## II.    The PetIQ et al. v. Elanco et al. Lawsuit (Case No. 8:25CV588)

About a month after Elanco commenced the patent and trade dress infringement lawsuits against Sergeant's and PetIQ, on September 26, 2025, PetIQ, Inc. and PetIQ, LLC, (together, "PetIQ") and Sergeant's Pet Care Products LLC ("Sergeant's") filed a Complaint against Elanco Animal Health, Inc. and Elanco US, Inc. (collectively, "Elanco") to "address and stop the reckless, bad-faith tactics and unfair business practices Elanco has used to interfere with PetIQ's upcoming launch of its PetArmor® Extend Collar products for dogs and cats." (Filing No. 1).

In PetIQ's Complaint, it alleges that on June 23, 2025, via its indirect, wholly-owned subsidiary, Sergeant's, it secured registrations from the EPA for a collar product for dogs and cats, the PetArmor Extend® Collar ("PetArmor Extend" products). PetIQ's PetArmor Extend products are approved for 8-month prevention and treatment of ticks and fleas, and contain as their active ingredients flumethrin, imidacloprid, and Miglyol 812, a caprylic/capric triglyceride, among other inactive ingredients. (Filing No. 1 at p. 7).

In the course of seeking EPA registrations for the PetArmor Extend Collar, PetIQ claimed "substantial similarity" of the active insecticide ingredients of EPA Registration No. 11556-155, Elanco's SERESTO® ("Seresto") collar products. PetIQ alleges "substantial similarity" allows an applicant to refer to safety data for the active insecticide ingredients already submitted to the EPA in connection with another product, but does not mean "that one product is the same as another product, that its inactive ingredients are the same, or that a product in any way infringes a patent." (Filing No. 1 at p. 8). As required under FINRA, on or around March 17, 2022, PetIQ sent three letters to Elanco, offering to pay Elanco for use of data on file with the EPA related to the active

insecticide ingredient flumethrin and end-use products containing flumethrin and imidacloprid as the active insecticide ingredients.  Elanco never responded to these letters.

On December 21, 2021, PetIQ, Inc. filed a petition with the USPTO's Patent and Trial Appeal Board for Inter Parties Review of the '122 Patent.  According to PetIQ, beginning in March 2022, outside counsel for both Elanco and PetIQ entered into discussions regarding the Inter Parties Review, resulting in Elanco's knowledge by at least December 2022 that the PetArmor Extend Collar "does not and cannot infringe the '122 Patent because it uses Miglyol 812, not Miglyol 840."  (Filing No. 1 at pp. 9-10).

PetIQ alleges Elanco then began "meddling" with the EPA registration process for PetIQ's new collar by filing an unsuccessful petition to deny Sergeant's registration applications for the PetArmor Extend Collar formulation, and by engaging in *ex parte* communications with the EPA.  (Filing No. 1 at pp. 11-12).  PetIQ alleges Elanco's meddling resulted in the EPA making an "unusual" request of PetIQ to conduct an additional study, which PetIQ completed, culminating in the EPA's approval of PetIQ's PetArmor Extend Collar for use on dogs and cats on June 23, 2025.  (Filing No. 1 at pp. 12-13).  PetIQ alleges Elanco became aware that the EPA had granted the registration applications for the PetArmor Extend Collar for use with both dogs and cats in July 2025, and then filed its patent infringement lawsuits one week after seeing PetIQ's PetArmor Extend Collar products displayed at the SuperZoo trade show.  (Filing No. 1 at p. 13).

PetIQ alleges that on August 25, 2025, the same day Elanco filed its lawsuits here and in the Middle District of Florida, Elanco also sent letters to various retailers, providing notice that it had filed two patent infringement lawsuits to stop what it described as "the manufacture and sale of copy-cat collars."  Elanco enclosed the Complaints and '122 Patent with its letters, asking customers for "your help" in carrying out Elanco's mission to "protect dogs, cats and their owners from infringing conduct related to Seresto, including the distribution and sale of any infringing products."  PetIQ alleges the purpose of these letters was to interfere with PetIQ's "existing and prospective business relationships, maintain Elanco's control over extended wear flea and tick collars, and injure PetIQ through unfair and deceptive trade practices."  (Filing No. 1 at p. 14). PetIQ alleges these letters have caused confusion among retailers and had the chilling effect intended by Elanco.  PetIQ alleges at least one retailer has signaled it will not sell PetArmor Extend Collar products until Elanco's lawsuits are resolved, and other retailers have "pushed back" on selling PetIQ's products.  (Filing No. 1 at pp. 15-16).

6

PetIQ therefore commenced this action against Elanco alleging claims for (1) false advertising under the Lanham Act, 15 U.S.C. § 1125(a); (2) deceptive trade practices under the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-302, 303; and (3) tortious interference with business relationship/expectancy.  PetIQ's claims all arise out of PetIQ's allegations that since at least December 2022, Elanco and its attorneys knew and had access to information "demonstrating that PetIQ's collar does not and cannot infringe the '122 Patent" either literally or under the doctrine of equivalents, but nevertheless sent letters and contacted PetIQ's retail partners in bad faith with false, misleading, and objectively baseless allegations that PetIQ's PetArmor Extend Collar products were "copycat collars" that infringed Elanco's intellectual property rights with the intent to "squash competition" from PetIQ.  (Filing No. 1 at pp. 17-22).

Elanco has filed a Motion to Extend Deadline to File Answer or Substantive Rule 12(b)(6) Motion to Dismiss (Filing No. 35), which is premised upon its arguments in its Motion to Dismiss Plaintiffs' Complaint as Compulsory Counterclaims or to Stay (Filing No. 36).  Elanco contends that PetIQ's Complaint should be dismissed and that PetIQ should be required to refile its claims in the first action because they are compulsory counterclaims.  And, similar to its motion in the first-filed action, Elanco asks the Court to stay its deadline to file a responsive pleading to the claims asserted by PetIQ until the merits of Elanco's infringement action are decided.  (Filing No. 36).

PetIQ disagrees that the claims in its separately filed action constitute compulsory counterclaims because they "involve different parties, depend on different facts, and present different legal issues"; however, PetIQ has filed a motion to consolidate the above-captioned cases for pretrial purposes, which it maintains would "obviate" Elanco's stated concerns if PetIQ's claims are indeed compulsory counterclaims.  (Filing No. 49 at pp. 5-6).

Elanco does not dispute the above-captioned cases involve common questions or law and fact, but nevertheless opposes PetIQ's motion to consolidate because PetIQ only asks for consolidation for pretrial purposes instead of for all purposes.  Elanco maintains that PetIQ's claims are compulsory counterclaims that must be dismissed and filed in the first action, or otherwise stayed until Elanco's claims are resolved on the merits.  (Filing No. 52).

**DISCUSSION**

I.    **Consolidation and Elanco's Motion to Dismiss PetIQ's Complaint as Compulsory Counterclaims**

Federal Rule of Civil Procedure 42(a) provides: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). "The district court is given broad discretion to decide whether consolidation would be desirable and the decision inevitably is contextual." *Cisler v. Paul A. Willsie Co.*, Case No. 8:09CV365, 2010 WL 3237222, *2 (D. Neb. Aug. 13, 2010). The consent of the parties is not required for consolidation. *Id.* Whether to grant a motion to consolidate is within the sound discretion of the court. *Id.* The "court [must] weigh the saving of time and effort that consolidation under Rule 42(a) would produce against any inconvenience, delay, or expense that it would cause . . . ." *In re Nelnet Servicing, LLC*, No. 4:22CV3181, 2023 WL 1108253, at *2 (D. Neb. Jan. 30, 2023) (quoting Wright & Miller § 2383 Consolidation—Discretion of Court, 9A Fed. Prac. & Proc. Civ. § 2383 (3d ed., 2022)). "[D]istrict courts generally take a favorable view of consolidation," and "[a]ctions involving the same parties are apt candidates for consolidation." *Id.* (quoting Wright & Miller § 2384 Consolidation—Particular Cases, 9A Fed. Prac. & Proc. Civ. § 2384 (3d ed., 2022)). Consolidation is inappropriate "if it leads to inefficiency, inconvenience, or unfair prejudice to a party." *EEOC v. HBE Corp.*, 135 F.3d 543, 551 (8th Cir. 1998) (citing Fed. R. Civ. P. 42(b)).

After review, the Court finds that consolidation of the above captioned cases for purposes of discovery and pretrial management is appropriate at this time. The parties do not really dispute that both cases have common questions of facts and law and involve mostly the same parties represented by the same attorneys. Both cases arise out of the same basic facts: Elanco contends PetIQ's competing flea and tick collars for pets—the PetArmor Extend—infringe Elanco's '122 Patent and distinctive trade dress for its Seresto flea and tick collars for pets, whereas PetIQ claims Elanco is misusing/abusing baseless infringement claims as an anticompetitive weapon to delay PetIQ's entry into the market and to harm competition. Both cases will require the Court to review and make findings regarding the '122 Patent, the '304 IPR, PetIQ's EPA approval, discussions between PetIQ's counsel and Elanco's counsel in 2022, Elanco's communications to retailers regarding the instant litigation, among other common facts. *See Blood v. Givaudan Flavors Corp.*,

8

2009 WL 982022, at *7 (N.D. Iowa Apr. 10, 2009) (noting that where there is inevitable "overlap," the savings to the parties, witnesses, and judicial resources is "enormous"). Although Elanco's Complaint and PetIQ's counterclaim and Complaint raise different legal claims premised upon different legal theories or sources of law, their claims nevertheless share overlapping elements, will share common evidence, and the success of some claims may be dependent on the success or failure of other claims. See, e.g., *Factory Mut. Ins. Co. v. Henning Companies, LLC*, No. 8:22CV432, 2025 WL 2804520, at *2 (D. Neb. Oct. 2, 2025) ("[C]ases need not be identical [for consolidation]. Rather, consolidation is appropriate where cases have 'common parties, overlapping legal issues, and related factual scenarios.'").

Consolidation will promote judicial economy, convenience, and provide for more efficient resolution of the parties' disputes. PetIQ filed its case one month after Elanco filed the first action, and both cases are essentially at the same stage in the pleadings. There has been no showing that consolidation would be prejudicial, and from the Court's perspective, consolidation will make case management more convenient and promote economic administration. Consolidation will avoid unnecessary costs, delay, repetition, and expedite a conclusion of these cases. See Fed. R. Civ. P. 1 (providing that the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."). As such, the Court finds PetIQ's motion to consolidate should be granted, and the above-captioned cases consolidated for discovery and pretrial management. However, given that these cases are in their infancy, the Court finds it premature to determine whether consolidation for trial will be appropriate.

Elanco maintains that consolidation of these cases for pretrial purposes does not resolve the issue of whether PetIQ's claims are compulsory counterclaims that must be dismissed and pled in the first action or stayed until Elanco's claims are resolved. Under Rule 13(a)(1) of the Federal Rules of Civil Procedure, a counterclaim is considered compulsory if it "(A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). The Eighth Circuit has identified four "varying tests for determining whether the claim in question arose out of the same transaction or occurrence, within the meaning of Rule 13(a)." *Cochrane v. Iowa Beef Processors, Inc.*, 596 F.2d 254, 264 (8th Cir. 1979). The four parts "ask whether (1) the issues of fact and law raised by the claim and counterclaim are largely the same,

9

(2) res judicata would bar a subsequent suit on the counterclaim, (3) substantially the same evidence supports/refutes the claim and counterclaim, and (4) there is any logical relation between the claim and counterclaim." *Farmers Union Serv. Ass'n of S. Dakota v. Murphy*, No. 4:25-CV-04079-RAL, 2025 WL 3204641, at *3 (D.S.D. Nov. 17, 2025) (quoting *Stockdall v. TG Invs., Inc.*, 129 F. Supp. 3d 871, 877 (E.D. Mo. 2015)). To determine a claim arises out of the same transaction or occurrence within the meaning of Rule 13(a), the Eighth Circuit agrees "with the majority of the federal courts that the logical relation test provides the needed flexibility." *Tullos v. Parks*, 915 F.2d 1192, 1195 (8th Cir. 1990). "The purpose of [Rule 13] is to prevent the fragmentation of litigation, multiplicity of actions and to conserve judicial resources." *RocketPower, Inc. v. Strio Consulting, Inc.*, No. 19CV01928ECTBRT, 2019 WL 5566548, at *6 (D. Minn. Oct. 29, 2019) (quoting *Provident Life & Accident Ins. Co. v. United States*, 740 F. Supp. 492, 496 (E.D. Tenn. 1990)).

Here, PetIQ's claims in its second filed action are compulsory counterclaims. PetIQ's Complaint asserts causes of action against Elanco Animal Health, Inc. and Elanco US, Inc. for (1) false advertising under the Lanham Act, 15 U.S.C. § 1125(a); (2) deceptive trade practices under the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §§ 87-302, 303; and (3) tortious interference with business relationship/expectancy. The basis of these claims is PetIQ's assertion that Elanco has been sending to PetIQ's retail partners letters containing "false, misleading, and objectively baseless allegations" that PetIQ's collars "infringed Elanco's intellectual property rights, including the '122 Patent." (Filing No. 1 at p. 17 in Case No. 8:25CV588). PetIQ alleges Elanco "knew" PetIQ's collars "do not and cannot infringe the ''122 Patent." (Filing No. 1 at p. 20 in Case No. 8:25CV588). Elanco's first-filed action alleges PetIQ's collars infringe the '122 Patent. All the claims asserted by the parties in both cases are part and parcel of the same "fight" regarding Elanco's claim under the '122 Patent and its alleged anticompetitive actions in enforcing its right. These claims all clearly have a close logical relationship. Thus, the Court concludes PetIQ's claims "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim" under Rule 13(a). Fed. R. Civ. P. 13(a)(1)(A); see, e.g, *Tullos*, 915 F.2d at 1196 ("To put the matter simply, all the claims asserted by both sides in this case are part of the fight between the parties for control of NBC and NBA. These claims hardly could have a closer logical relationship. We therefore hold that they arise out of the same "transaction or occurrence" within the meaning of Rule 13(a)[.]").

10

However, "[i]n situations '[w]here one party does not file a compulsory counterclaim in a pending action, but, instead, files a second action based on that claim in another court,' courts in multiple districts have declined to dismiss the second action if it had been consolidated with the first" since "consolidation obviates the concerns of Rule 13(a), thereby making dismissal inappropriate." *RocketPower*, 2019 WL 5566548, at \*6 (collecting cases) (quoting *Jack LaLanne Fitness Ctrs., Inc. v. Jimlar, Inc.*, 884 F. Supp. 162, 164 (D.N.J. 1995)). Here, the Court has determined the above-captioned cases can and should be consolidated. Therefore, regardless of whether PetIQ's claims are indeed compulsory counterclaims or not, the concerns of Rule 13(a) are obviated upon consolidation. See, e.g., *Dryshod Int'l, LLC v. Haas Outdoors, Inc.*, No. 1:18-CV-596-RP, 2019 WL 5149860, at \*2 (W.D. Tex. Jan. 18, 2019) (concluding consolidation pursuant to Rule 42 rather than dismissal was the "proper remedy" to "obviate[] the concerns of Rule 13(a)"); *In re Innotron Diagnostics*, 800 F.2d 1077 (Fed. Cir. 1986) (ordering the cases to be consolidated after finding antitrust and breach of contract claims pending in second-filed case in the same district were compulsory to the patent action; "The district court's consolidation of the cases produced the same status as that which would have obtained if Abbott had filed its patent claim as a counterclaim."); *Full Circle United, LLC v. Skee-Ball, Inc.*, No. 11 CV 5476 (LB), 2014 WL 12829195, at \*4 (E.D.N.Y. May 13, 2014) (finding dismissal or stay of case that the defendant argued "should have been brought as compulsory counterclaims . . . or stayed" was "unnecessary" because "[t]he Court has already consolidated these cases[.]") (citing *Algonquin Power Corp. v. Trafalgar Power, Inc.*, No. 00-CV-1246(DEP), 2000 WL 33963085, at \*6 (N.D.N.Y. Nov. 8, 2000) (recommending motion to dismiss claims as compulsory counterclaims be denied as "academic" because the actions were consolidated); *Chesson v. Rives*, No. 12-CVS-3382, 2017 WL 6383218, at \*4 (N.C. Super. Dec. 13, 2017) (concluding that even "if Chesson is correct that the *Chesson II* claim was a compulsory counterclaim that should have been asserted in *Chesson I* . . . From a practical viewpoint[,] it [makes] no difference whether the claim should be stated by an amendment in the first action or by complaint in a second action" and "the appropriate practical solution is to simply consolidate the cases."). Accordingly, the undersigned magistrate judge recommends that Elanco's Motion to Dismiss PetIQ's Complaint as Compulsory Counterclaims[3] (Filing No. 36 in Case No. 8:25-cv-00588) be denied as moot upon the consolidation of these cases.

---

[3] The Court will address Elanco's additional/alternative request to stay further below.

## II.    Elanco's Motions to Stay PetIQ's Claims or to Extend Responsive Pleading Deadline

Elanco seeks to immediately stay all of PetIQ's claims across both cases.  Elanco contends the "threshold viability" of PetIQ's Sherman Act counterclaim "depends entirely on the outcome of Elanco's intellectual property infringement claims," (Filing No. 43 in Case No. 8:25CV514), and that "like the antitrust counterclaim," PetIQ's claims in the second filed action "should be stayed until the threshold intellectual property infringement claims are resolved."  (Filing No. 51 at p. 3 in Case No. 8:25CV588).

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248 (1936).  A federal district court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681 (1997).  In evaluating a stay, a court should consider several relevant factors, including "maintaining control of its docket, conserving judicial resources, and the important interest of providing for the just determination of cases pending before the court," *Rosales v. Heath*, No. 8:17CV87, 2017 WL 2533365, at *2 (D. Neb. June 9, 2017), and the "possible damage, hardship and inequities to the parties to the lawsuit and the relationship of the stay to the fulfillment of judicial objectives of simplification of the issues in question and trial of the case." *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, No. 806CV458, 2007 WL 2344805, at *1 (D. Neb. Aug. 14, 2007) (quoting *United Sweetener USA, Inc. v. Nutrasweet Co*., 766 F. Supp. 212, 217 (D. Del. 1991)).  In deciding whether a stay is appropriate, the Court should consider multiple factors, including: (1) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; (2) whether a stay will simplify the issues in question and streamline the trial; (3) whether a stay will reduce the burden of litigation on the parties and the court; and (4) whether discovery is complete and whether a trial date has been set.  *Automated Layout Techs., LLC v. Precision Steel Sys.*, LLC, No. 4:20-CV-3127, 2023 WL 8018739, at *3 (D. Neb. Nov. 20, 2023) (citing *Murata Mach. USA v. Daifuku Co. Ltd.*, 830 F.3d 1357, 1361-62 (Fed. Cir. 2016).

The thrust of Elanco's requests to stay PetIQ's counterclaim and claims is that they are entirely dependent on the outcome of the merits of Elanco's intellectual property claims, and that courts "routinely grant requests for stays of antitrust claims based on alleged "sham" patent enforcement."  (Filing No. 44 at p. 2 in Case No. 8:25CV514).  PetIQ counters that Elanco's request does not serve judicial economy, is premised upon Elanco's assumption it will prevail on

12

its patent infringement claim, would unfairly prejudice PetIQ's ability to prosecute its claims, and is Elanco's attempt to "unlawfully continue using its sham suit to dissuade retailers from stocking PetIQ's competing product and maintain its monopoly." (*Id.* at pp. 3-4).

Elanco primarily bases its request for a stay based upon the *Noerr-Pennington* doctrine. The First Amendment to the Constitution provides immunity from antitrust and tort liability based on the filing of lawsuits. See *Prof. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56-58 (1993) ("*P.R.E.*") (citing *E.R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 136-38 (1961)). The *Noerr-Pennington* doctrine, which arose in the context of antitrust claims, "immunizes acts related to the constitutional right to petition the courts for grievance, unless the act is a mere sham." *Inline Packaging, LLC v. Graphic Packaging Int'l, LLC*, 962 F.3d 1015, 1028 (8th Cir. 2020) (citation omitted). The sham exception to the *Noerr-Pennington* doctrine consists of two elements: (1) the lawsuit "must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." . . . and if so, (2) "the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." *Id.* (quoting *P.R.E.*, 508 U.S. at 60-61).

The Eighth Circuit has stated the *Noerr-Pennington* doctrine applies to tortious interference claims. See *Hufsmith v. Weaver*, 817 F.2d 455, 459 (8th Cir. 1987). Because "[t]he right to petition means more than simply the right to communicate directly with the government," protection under the doctrine "necessarily includes those activities reasonably and normally attendant to effective petitioning," *In re IBP Confidential Bus. Documents Litig.*, 755 F.2d 1300, 1310 (8th Cir.1985), and several courts have determined the "*Noerr–Pennington* doctrine immunizes pre-suit demand letters, so long as those demand letters are not a 'sham.'" *Select Comfort Corp. v. Sleep Better Store, LLC*, 838 F. Supp. 2d 889, 896 (D. Minn. 2012) (collecting cases).

District courts do regularly stay antitrust claims based upon an assertion that the patent litigation was a sham. See *Mitsubishi Heavy Indus., Ltd. v. Gen. Co.*, 720 F. Supp. 2d 1061, 1070 (W.D. Ark. 2010) (collecting cases) (finding stay was warranted because "if GE prevails in any of the infringement actions, then Mitsubishi's [antitrust] claims in this action will be moot because GE will have the right to exclude Mitsubishi from the market."). However, PetIQ asserts Elanco

13

grossly overreaches" in seeking to stay PetIQ's antitrust counterclaim until *both* the patent infringement and trade dress claims are resolved.  (Filing No. 50 at p. 2, n. 1 in Case No. 8:25CV514).  Some courts have stated that a claim of "sham" litigation "must allege facts plausibly showing that *all . . .* claims are objectively baseless.  In other words, if any one claim has objective merit, . . . [the case] cannot be considered a sham." *Olson v. PowerBlock, Inc.*, No. 21-CV-2713 (ECT/BRT), 2022 WL 1624888, at *7 (D. Minn. May 23, 2022) (emphasis added) (citing *Dentsply Int'l Inc. v. New Tech. Co.*, Civ.A. No. 96-272 MMS, 1996 WL 756766, at *2 (D. Del. Dec. 19, 1996) ("[C]ourts have indicated that litigation will not be considered a 'sham' so long as at least one claim in the lawsuit has objective merit."); and *P.R.E*, 508 U.S. at 60 (recognizing that the entire "lawsuit must be objectively baseless").  However, other Courts have determined otherwise. See *MCI Commc'ns v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1154-55 (7th Cir. 1983) (holding that a single baseless claim within a complaint can serve as grounds for a sham litigation claim); *In re Wellbutrin SR Antitrust Litig.*, 749 F. Supp. 2d 260, 266 (E.D. Pa. 2010) (discussing conflicting case law but ultimately concluding that one sham claim among several non-sham claims is sufficient); *Provisur Techs., Inc. v. Weber, Inc.*, No. 21-CV-06113-SRB, 2024 WL 4919541, at *3 fn. 3 (W.D. Mo. Jan. 5, 2024) ("Defendants further argue the sham litigation exception does not apply because Plaintiff does not allege that all of their counterclaims are a sham. . . . [T]he Court agrees with Plaintiff that Defendants' argument 'would lead to the absurd result that a party seeking to monopolize a market by knowingly asserting fraudulently procured patents could immunize itself from antitrust liability by simply packaging its sham patent claims with colorable, but unrelated, non-patent claims.'").

The above cases reflect that courts generally demonstrate a willingness to stay antitrust claims due to the high bar required to show the infringement claims were indeed a "sham." However, the Court is less convinced that Elanco has demonstrated PetIQ's claims in its Complaint should be stayed under the same theory.  Nevertheless, at this time and after considering the factors necessary when ordering a stay, the Court finds it imprudent to stay PetIQ's counterclaim and its Complaint before Elanco is even required to file responsive pleadings.  Requiring Elanco to file responsive pleadings may help frame or limit the legal issues, claims, and factual allegations in the pleadings, and will require Elanco to actually plead and raise its defenses, which could simplify and streamline the claims before the Court.  While the Court may reconsider a renewed motion to

14

stay in the future, particularly as to PetIQ's antitrust claim, at this time the Court will require Elanco to file responsive pleadings to PetIQ and Sergeant's claims and counterclaim. Accordingly,

**IT IS ORDERED**:

1. In Case No. 8:25-cv-00514:

   a. Plaintiffs' Motion to Extend Deadline to File Answer or Substantive Rule 12(b)(6) Motion to Dismiss Counterclaims (Filing No. 40) is denied. Plaintiffs shall file a responsive pleading to PetIQ's Counterclaim on or before **April 8, 2026**; and

   b. Plaintiffs' Motion to Stay (Filing No. 43) PetIQ's Counterclaim is denied, without prejudice to reassertion once all pleadings have been filed, any motions to dismiss have been ruled upon, and after the parties meet and confer to prepare and file a Rule 26(f) Report.

2. In Case No. 8:25-cv-00588:

   a. Defendants' Motion to Extend Deadline to File Answer or Substantive Rule 12(b)(6) Motion to Dismiss (Filing No. 35) is denied. Defendants shall file a responsive pleading to Plaintiffs' Counterclaims on or before **April 8, 2026**; and

   b. Plaintiffs' Motion to Consolidate for All Pretrial Purposes (Filing No. 49) is granted. The above-captioned cases are consolidated for pretrial management. The Court designates Case No. 8:25CV514 as the "Lead Case" and Case No. 8:25CV588 as the "Member Case."

      i. The Court's CM/ECF System has the capacity for "spreading" text among the consolidated cases. If properly docketed, the documents filed in the Lead Case will automatically be filed in the Member Case. The parties are instructed to file documents in the Lead Case and to select the option "yes" in response to the System's question whether to spread the text.

      ii. The parties may not use the spread text feature to file complaints, amended complaints, and answers; to pay filing fees electronically using pay.gov; or to file items related to service of process. If a party believes an item in addition the aforementioned documents should not be filed in both the consolidated cases, the party must move for permission to file the item

only in one case. The motion must be filed in both the consolidated cases using the spread text feature.

Additionally,

**IT IS HEREBY RECOMMENDED** to the Honorable Robert F. Rossiter, Jr., Chief United States District Court Judge, that, in Case No. 8:25-cv-00588, Defendants' Motion to Dismiss Plaintiffs' Complaint as Compulsory Counterclaims or to Stay (Filing No. 36) be denied as moot upon the consolidation of these cases.

Dated this 19th day of March, 2026.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge

**ADMONITION**

A party may object to a magistrate judge's order and findings and recommendation by filing an objection within fourteen (14) days after being served with a copy of the order and findings and recommendation. NECivR 72.2.  Failure to timely object may constitute a waiver of any objection.